IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CAPITAL GRILLE HOLDINGS, INC.,    )
   )
      Plaintiff,    )
   )    NO. 3:19-cv-00576
v.    )
   )    JUDGE RICHARDSON
HISTORIC HOTELS OF NASHVILLE,    )
LLC,    )
   )
      Defendant.    )

## MEMORANDUM OPINION

Pending before the Court is Defendant Historic Hotels of Nashville, LLC's Motion to Dismiss (Doc. No. 21), supported by an accompanying brief (Doc. No. 22). Plaintiff Capital Grille Holdings, Inc. filed a response (Doc. No. 25), and Defendant replied (Doc. No. 26). For the below-stated reasons, the Motion will be denied.

## ALLEGED FACTS[1]

Plaintiff CG Holdings ("Plaintiff") is a subsidiary of Darden Corporation ("Darden"), a full-service restaurant group. (Doc. No. 1 at ¶ 8). Darden's restaurants encompass some of the most recognizable brands in the restaurant industry, including, The Capital Grille®, LongHorn Steakhouse®, The Olive Garden®, Bahama Breeze®, Seasons 52®, Eddie V's®, Cheddar's Scratch Kitchen®, and Yard House®. (*Id.* at ¶ 9). The first The Capital Grille was opened in 1990 in Providence, Rhode Island. (*Id.* at ¶ 10). Darden acquired 28 operating The Capital Grille restaurants along with The Capital Grille brand from Rare Hospitality International Inc. in 2007. (*Id.*). Today, Darden owns and operates more than fifty-seven The Capital Grille restaurants in the

---

[1] The cited facts are alleged in the Complaint and accepted as true for purposes of the instant motion to dismiss.

United States, including one restaurant in Memphis, Tennessee, located at 6065 Poplar Avenue, Memphis, Tennessee 38119, that it owns through its subsidiary. (*Id*. at ¶ 11). Plaintiff has continuously and exclusively used its The Capital Grille trademarks and service marks to promote The Capital Grille restaurants. (*Id*. at ¶ 12). Several of The Capital Grille marks are the subject of United States trademark and service mark registrations owned by Plaintiff, including:

> a. Registration No. 1,644,015 for the design plus word mark THE CAPITAL G · R · I · L · L · E (stylized), registered May 7, 1991, for use in connection with "restaurant services" ("THE CAPITAL GRILLE & Design Mark");
>
> b. Registration No. 3,032,066 for the word mark THE CAPITAL GRILLE, registered December 20, 2005, for use in connection with "restaurant services"; and
>
> c. Registration No. 3,739,935 for the design plus word mark THE CAPITAL G · R · I · L · L · E (stylized), registered January 19, 2010, for use in connection with "restaurant services."

(*Id*. at ¶ 13). Plaintiff has prominently used and promoted The Capital Grille marks through extensive advertising, marketing, sale of goods, and the provision of services. (*Id*. at ¶ 16). As a result of Plaintiff's adoption, continuous use, and heavy promotion of The Capital Grille marks, the marks have become invaluable assets of Plaintiff, serving as a symbol of quality goods and services provided by Plaintiff. (*Id*. at ¶ 17).

In 2016, Plaintiff re-initiated researching the logistics of opening a new The Capital Grille location in Nashville, Tennessee, and has been actively searching for a suitable location for its intended new restaurant since that time. (*Id*. at ¶ 18). Upon opening a The Capital Grille in Nashville, Plaintiff and Defendant would be in direct competition with one another. (*Id*. at ¶ 19).

In 1995, Defendant began using the "Capitol Grille" name and mark in connection with the operation of its restaurant located at 231 6th Avenue N. Nashville, Tennessee 37219. (*Id*. at ¶ 20). Prior to its use of the "Capitol Grille" name and mark, Defendant's restaurant operated under the name and mark "Grille Room." (*Id*.). Prior to April 23, 1990, when Plaintiff registered its first

mark, Defendant did not own any restaurants that operated under a name or mark consisting in whole or in part of the phrase "The Capital Grille" and was not otherwise known by or using such a name. (*Id*. at ¶ 21). Defendant's use of the Capitol Grille name and marks occurred after Plaintiff's predecessor adopted the Capital Grille marks and federally registered its the Capital Grille design mark. (*Id*. at ¶ 22).

Defendant's Capitol Grille name and marks are similar to Plaintiff's Capital Grille name and marks in sight, sound, connotation, and commercial impression. (*Id*. at ¶ 23). In light of the heavy promotion and advertising of Plaintiff and its predecessor owners[2] of The Capital Grille restaurants, Defendant had actual knowledge of Plaintiff's rights in the Capital Grille marks. (*Id*. at ¶ 24). Prior to its use of the Capitol Grille name and marks, Defendant also had constructive knowledge of Plaintiff's federally registered Capital Grille design mark pursuant to 15 U.S.C. § 1072. (*Id*. at ¶ 25). Defendant's unauthorized use of the Capitol Grille name and marks is an attempt to trade on the goodwill of Plaintiff's Capital Grille marks, and to falsely imply that Defendant is affiliated or associated with, or sponsored or endorsed by Plaintiff. (*Id*. at ¶ 26). Defendant has engaged in and is continuing to engage in the above misconduct willfully and deliberately, and with an intent to misappropriate Plaintiff's goodwill in it's the Capital Grille marks. (*Id*. at ¶ 27).

**LEGAL STANDARD**

### Rule 12(b)(1)

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving

---

[2] At times herein, a reference to Plaintiff may encompass Plaintiff's predecessor(s).

jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citation omitted). There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. A facial attack on subject-matter jurisdiction, as Defendant has made here, goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Upon facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject-matter jurisdiction." *Id*.

### Rule 12(b)(6)

For purposes of a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must view all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F.

Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## ANALYSIS

### I. Subject-Matter Jurisdiction

Defendant argues that Plaintiff's claims are not ripe and that therefore the Court lacks subject-matter jurisdiction in this case. "The ripeness doctrine is one of several justiciability doctrines 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*,

532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quotation omitted). It is a "question of timing" that "becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

The Sixth Circuit has instructed that ripeness is to be addressed under the constitutional standing framework.[3] *See Kiser*, 765 F.3d at 607.  The elements of standing are: "(1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury." *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998)). Therefore, the Court will analyze Defendant's ripeness argument under the elements of constitutional standing, as Defendant itself has done without explanation.[4] In that regard, the Court

---

[3] This is in contrast to treating ripeness separately as a stand-alone requirement for standing. As the Sixth Circuit recently noted:

> This Court recently stated in *Kiser v. Reitz* that "the Supreme Court has cast into some doubt 'the continuing vitality' of the long-established prudential aspects of the ripeness doctrine, specifically the aspects that concern hardship to the parties and fitness of the dispute for resolution." 765 F.3d at 607 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014)). We found that the Supreme Court in *Driehaus* "addressed the constitutional component of ripeness in terms of standing," *id.* (citing *Driehaus*, 573 U.S. at 158 n.5, 134 S. Ct. 2334), and therefore analyzed the plaintiff's claim, "which was dismissed as unripe by the district court, using the constitutional standing framework," *id.* In line with our reasoning in *Kiser*, we analyze Plaintiffs' claims, which the district court dismissed as unripe, under the constitutional standing framework.

*Saleh v. Barr*, No. 19-3240, 2020 WL 615047, *4 (6th Cir. Feb. 10, 2020). Likewise, the parties here analyze Plaintiff's claims using the constitutional standing framework.

[4] Defendant refers to these three elements as "the three elements of ripeness." (Doc. No. 22 at 12). However, as noted, these are actually the elements of constitutional standing, (something broader than mere ripeness), and Defendant does not explain to the Court the relationship between the elements of standing and its ripeness argument. And the Court is perplexed why Defendant, and Plaintiff for that matter, consistently use the term "ripeness" as if it were a discrete standing requirement when actually they apparently mean to address whether Plaintiff sufficiently alleged an injury-in-fact, which is the first element of standing.

notes that the concept of ripeness appears incorporated within these three elements, especially the first element.

Defendant argues that Plaintiff has not alleged an injury-in-fact because it has not alleged that Plaintiff "has imminent plans to begin operating in the Nashville area." (Doc. No. 22 at 12). Specifically, Defendant argues that Plaintiff has not alleged that it has "specific, imminent plans" to use the mark in Nashville because it has merely alleged that Plaintiff has "'re-initiated researching the logistics' of opening a new location [in Nashville] and 'has been actively searching for a suitable location for its intended new restaurant' since 2016." (*Id*. at 13 (quoting Doc. No. 1 at ¶ 18)). Defendant contends that the closest Plaintiff comes to alleging an injury is the allegation that the marks "would be in direct competition"; however, according to Defendant, this is not enough to establish standing, because implicit in this allegation is the admission that the parties are not currently competing with each other. (*Id*. at 12-13 (quoting Doc. No. 1 at ¶ 19)). Defendant maintains that these allegations show that Plaintiff "has no standing to bring its unripe claim." (*Id*. at 14).

In response, Plaintiff argues that its claims are ripe[5] because under Sixth Circuit precedent, likelihood of entry into a market is just one of the eight factors in the test for likelihood of confusion; thus, the Sixth Circuit does not judge the ripeness of a trademark infringement claim based on likelihood of entry. (Doc. No. 25 at 10 (citing *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)). Plaintiff further argues that even assuming that imminent entry was required, Plaintiff has pled facts that demonstrated it has been "researching the logistics of opening a new The Capital Grille location in Nashville, Tennessee" and that is has been "actively searching for a suitable location" for this restaurant. (*Id*. at 11 (quoting Doc. No. 1 at ¶

---

[5] The Court notes that Plaintiff should have framed its argument in terms of the elements of constitutional standing, as the Sixth Circuit has instructed.

18)). Plaintiff contends that "this statement of intent to open a restaurant in the same city as Defendant is sufficient to state a 'ripe' claim for trademark infringement." (*Id*.). Therefore, Plaintiff urges the Court to reject Defendant's argument because "the potential for injury has arisen now[.]" (*Id*.).

In reply, Defendant argues that Plaintiff failed to address its jurisdictional argument because "Plaintiff urges the Court to focus on the factual inquiry underpinning the likelihood-of-confusion analysis by equating ripeness with 'likelihood of entry' and concluding that the Sixth Circuit 'does not judge the ripeness of a trademark infringement claim based on likelihood of entry.'" (Doc. No. 26 at 2 (citing Doc. No. 25 at 10)). Defendant claims that Plaintiff's argument ignores the jurisdictional issue all together, because the cases Plaintiff cites address a merits argument, and do not discuss any jurisdictional issues at all. (*Id*. at 2-4). Defendant asserts that Plaintiff's allegation that it is "actively searching for a suitable location" is insufficient because "Plaintiff is required to show 'some concrete, impending plans for entry.'" (*Id*. at 3 (quoting 5 *McCarthy on Trademarks and Unfair Competition* § 26:34 (5th ed.)).

In addition to the absence of cited Sixth Circuit case law supporting the argument that Plaintiff's claims (or even claims similar to Plaintiff's in terms of how conjectural or imminent the alleged harm is) do not constitute an injury-in-fact, the problem with Defendant's argument is that the Complaint clearly alleges that Defendant is actively using Plaintiff's registered marks in commerce—marks, that as discussed below, the Court must construe at the motion to dismiss stage as having nationwide priority.[6] (*See* Doc. No. 1 at ¶¶ 20, 27 ("Upon information and belief, on or

---

[6] "Most civil law nations follow the rule that ownership and priority of a trademark go to the party who was first to file an application or obtain a registration. But in the United States, the rule of priority is that ownership and priority of a trademark go to the party who was first-to-use. *The only exception is that since 1989, priority of use can be obtained by filing an application for federal registration, which, upon registration, confers a "constructive use" date of first use.* But that "constructive use" priority can always be defeated by another party's evidence of a prior actual use." *McCarthy on Trademarks and Unfair Competition* § 16:1.50 (5th ed.) (citations omitted). Plaintiff alleged that its senior federal mark registered in 1991 was infringed by Defendant's junior common law mark that it began using

about 1995, Defendant [] began using the "CAPITOL GRILLE" name and mark in connection

with the operation of its restaurant located at 231 6th Avenue N. Nashville, Tennessee 37219" and

"Defendant [] is continuing to engage in the above misconduct")). Therefore, because Plaintiff has

alleged that its trademarks have nationwide priority, and that Defendant is currently using its

marks, it has alleged an injury-in-fact that is concrete and actual.

Although the parties[7] cite none of these cases, the point made by the Court above is likely

why all the cases the Court can locate regarding jurisdictional issues of timing in a trademark

infringement claim all focus on the plans of *a defendant* to enter a market, rather than the plans of

*a plaintiff*. *See Araca Merchandise L.P. v. Does*, 182 F. Supp. 3d 1290, 1295 (S.D. Fla. 2016)

(holding that trademark infringement claim was not ripe because the complaint did not allege that

*the defendant's* infringement had ever happened before, or that it was a continuing violation);

*House of Bryant Publications, LLC v. City of Lake City, Tenn.*, No. 3:14-CV-93-TAV-HBG, 2014

WL 5449672, at *6 (E.D. Tenn. Oct. 22, 2014) (holding that the plaintiff's trademark infringement

claim was ripe because *the defendants* had taken significant steps toward infringement of

plaintiff's "ROCKY TOP" marks); *Young v. Vannerson*, 612 F. Supp. 2d 829, 845 (S.D. Tex.

---

in 1995. Additionally, as discussed below, the doctrine of tacking prevents dismissal of Plaintiff's claims with respect to its word mark and second design mark that were registered after 1995.

[7] The Court is puzzled why Plaintiff did not make this argument, which the Court perceives as both correct and foundational to Plaintiff's position here. Plaintiff hangs its hat on the point that Defendant's argument is one for the merits, rather than pointing out the crucial fact that it (Plaintiff) sufficiently alleges that its marks have *nationwide* priority—an allegation that necessarily entails any use by Defendant *anywhere* of those marks presumptively constitutes current infringement *regardless of whether Plaintiff has entered a specific geographic location. See* 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration[.]"). It ultimately may turn out that a defendant's use in a particular geographic area does not constitute infringement, if the defendant was a prior user in that area. But this potential defense to infringement in a particular location does not change the fact that a complaint's allegation of nationwide registration sufficiently alleges that the defendant's use *anywhere* in the country constitutes infringement. And this alleged infringement inherently entails an injury-in-fact, as discussed below.

2009) (finding that the plaintiff's trademark infringement claim was ripe because *the defendants* had "expended considerable sums to develop and to market the VY and INVINCEABLE marks"); *AARP v. 200 Kelsey Associates, LLC*, No. 06 Civ. 81(SCR), 2009 WL 47499, at *9 (S.D.N.Y. Jan. 8, 2009) (holding that the plaintiff's trademark infringement claim was ripe because *the defendants* had "taken significant steps" toward infringement); *Geisha v. Tuccillo*, 525 F. Supp. 2d 1002, 1015-16 (N.D. Ill. 2007) (finding that the plaintiff's claims were not ripe because *the defendant*, who had never opened a restaurant before, had only "play[ed] around with a menu," had no specific location in mind, and was not using a real estate agent to look for a location but merely "driving around and looking for properties by himself.").[8]

The Court finds that these cited authorities—and the discussion in footnote 6 above—help to clarify the point that because Plaintiff alleged that Defendant is currently infringing its marks, and has been since 1995, there is no legitimate question that Plaintiff's alleged injury-in-fact is an immediate injury and thus sufficient to support standing. Merely because Plaintiff has yet to use its mark in the Nashville area in no way affects the allegation that it is currently suffering an injury-in-fact based on Defendant's infringing use of its marks. As the Federal Circuit has noted in the analogous context of patent infringement:

> A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention. This right to exclude is the legal interest created by statute. Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that constitutional injury arises from invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical). The party holding the exclusionary rights to the patent suffers legal injury in fact under the statute.

---

[8] *Kiser* does not apply to these cases because the courts are either outside of the Sixth Circuit, or decided prior to *Kiser*, and therefore, the arguments discuss "ripeness" rather than the appropriate analysis of an "injury-in-fact." In any event, the Court finds that these cases are still applicable as they all involve the immediacy of an alleged injury. Thus, they are relevant to Defendant's argument that an "injury-in-fact" has not yet occurred.

*Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (some citations omitted). The Court sees no reason why the same would not apply in the instant trademark-infringement case. *See Procraft Cabinetry, Inc. v. Sweet Home Kitchen & Bath, Inc.*, 348 F. Supp. 3d 752, 758 (M.D. Tenn. 2018), *appeal dismissed*, No. 18-6053, 2018 WL 6984456 (6th Cir. Dec. 14, 2018) ("It is fairly obvious that Procraft Cabinetry has standing to bring the Complaint: it alleges that it suffered injuries in fact, including trademark infringement[.]"). Therefore, the Court concludes that an injury-in-fact exists for purposes of constitutional standing.

Moreover, the case law Defendant does present to the Court belies its argument. In its reply, it asserts that

> While the "[a]ctual establishment of outlets and sales" by Plaintiff is not required, Plaintiff is required to show "some concrete, impending plans for entry." 5 *McCarthy on Trademarks and Unfair Competition* § 26:34 (5th ed.). This includes having leased a property, investigating sites and attempting to arrange leases, along with the reputation of registrant, actively negotiating a franchise with a prospective franchisee and intending to begin operations in one week, or the existence of a prior license in the area.

(Doc. No. 26 at 3). To the Court, Defendant here seems to imply that "Plaintiff is required to show 'some concrete, impending plans for entry'" *in order to establish standing*.[9] But that is not what *McCarthy* is talking about in this part of his treatise. Instead, he is talking about the requirements for showing "likelihood of entry" for purposes of the test for likelihood of confusion. Likewise, that is what the four district court cases Defendant cites here are talking about;[10] *none of them*

---

[9] The Court characterizes Defendant's argument this way because in the prior sentence, Defendant addresses whether Plaintiff's allegations "add up to a ripened case," (Doc. No. 26 at 2) rather than, for example, whether Plaintiff's allegations "add up to a sufficient showing of 'likelihood of entry' for purposes of the eight-factor test for likelihood on confusion."

[10] *Supershuttle Int'l Inc. v. Schafer-Schonewill & Assocs. Inc.*, No. CIV. A. 95-D-2272, 1995 WL 880776, at *4 (D. Colo. Sept. 19, 1995); *Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986); *Fotomat Corp. v. Cochran*, 437 F. Supp. 1231, 1237 (D. Kan. 1977); *Howard Stores Corp. v. Howard Clothing Inc.*, 308 F. Supp. 70, 73 (N.D. Ga. 1969), *decision supplemented*, 311 F. Supp. 704 (N.D. Ga. 1970).

*discuss the likelihood of entry in the context of a jurisdictional argument, and instead all discuss the plaintiff's likelihood of entry in the context of a likelihood of confusion analysis*. But when Plaintiff relied on such case law, Defendant criticized such reliance because it "fail[ed] to address the lack of jurisdiction or ripeness of Plaintiff's claims" and instead "focus[ed] on the factual inquiry underpinning the likelihood-of-confusion analysis." (Doc. No. 26 at 2). Defendant's criticism may well be valid insofar as it points out true flaws in Plaintiff's standing argument. But such criticism proves too much because if it is valid, it serves only to support Plaintiff's assertion that Defendant's purported jurisdictional argument actually is an attack on the merits dressed up as an attack on standing.[11]

Likewise, Defendant's citation to *McCarthy on Trademarks and Unfair Competition* also supports that this specific argument is for the merits. As stated in the very section Defendant cites:

> Once the senior user-federal registrant shows a likelihood of entry into an area of the United States, it is entitled to an injunction against a junior user of a conflicting mark in that territory. That is, a likelihood of confusion flows directly from the proof of likelihood of entry by the registrant. In such a case, a likelihood of entry must be alleged in the complaint. *If it is not, the complaint will be dismissed for failure to state a claim.*

5 *McCarthy on Trademarks and Unfair Competition* § 26:34 (5th ed.) (emphasis added). Therefore, the Court agrees with Plaintiff that Defendant's argument regarding Plaintiff's entrance into the Nashville, Tennessee market is one for the merits. The Court concludes that Plaintiff's claims are ripe when judged by the allegations present on the face of Plaintiff's Complaint. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) will be denied.

---

[11] An attack to which Plaintiff responded, unfortunately, by itself addressing concepts (like likelihood of confusion) that go to the merits rather than to standing.

## II. Failure to State a Claim

Defendant alternatively argues that some of Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff asserts the following claims in its Complaint: Federal Service Mark Infringement ("Count I"), Federal Unfair Competition and False Designation of Origin ("Count II"); Common Law Trademark Infringement ("Count III"); Common Law Unfair Competition ("Count IV"); and Unfair or Deceptive Trade Practices ("Count V").[12] (Doc. No. 1). As discussed below, none of them are subject to dismissal under Rule 12(b)(6).

### Count I: Federal Service Mark Infringement

*Defendant's Position*

Count I alleges Defendant infringed Plaintiff's federally registered trademarks. As noted above, Plaintiff alleges that it has three federally registered trademarks: a first design mark (registered in 1991); a word mark (registered in 2005); and a second design mark (registered in 2010). (Doc. No. 1 at ¶ 13). Defendant argues that Plaintiff has failed to state a claim of infringement as to the first design mark because Plaintiff's allegation of infringement are conclusory. Further, Defendant argues that Plaintiff has failed to state a claim as to the word mark and second design mark because they were registered *after* Defendant began using its mark (in the Nashville area) in 1995.

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts plausibly suggesting that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *Pureworks, Inc. v. Brady Corp.*, No. 3:09-cv-983, 2010 WL 3724229, at *11 (M.D. Tenn. Sep. 15, 2010) (citing *Hensley Mfg. v.*

---

[12] As noted below, Defendant does not argue in its motion to dismiss that Count III or Count V should be dismissed.

*ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Despite this verbal formulation indicating that a plaintiff must allege that the defendant used *the registered trademark*, the plaintiff actually does not have to allege that; allegations of the use of a mark *confusing* similar to the plaintiff's mark will suffice. *E.g.*, *Card Tech Int'l, LLLP v. Provenzano*, No. CV 11-2434 DSF PLAX, 2012 WL 2135357, at *26 (C.D. Cal. June 7, 2012) ("Trademarks need not be identical in order to infringe; it is enough if they are confusingly similar." (citing *Saxlehner v. Eisner & Mendelson Co.,* 179 U.S. 19 (1900))). Additionally, the Sixth Circuit "considers the question of whether there is a likelihood of confusion to be a mixed question of fact and law." *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (citing *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 624 (6th Cir. 1998)).

Defendant argues that Plaintiff fails to state a claim in Count I as to the word mark and second design mark because "Plaintiff concedes [Defendant] has superior common law rights in this geographic area at least regarding Plaintiff's Word Mark and Plaintiff's Second Design Mark." (Doc. No. 22 at 5). Specifically, Defendant argues that Plaintiff cannot plausibly assert that Defendant infringed Plaintiff's word mark and second design mark, because Defendant began using Plaintiff's mark at least ten years before Plaintiff registered those marks.   (*Id*.). Thus, Defendant contends, as to these marks Count I fail on its face. (*Id*. at 5-6).   In support, Defendant cites *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc*., 249 F.3d 564 (6th Cir. 2001), for the proposition that "[f]ederal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce." (*Id*. at 6 (quoting *Allard*, 249 F.3d at 572)). "The first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to the mark in the geographic area in which the mark is used." (*Id*. (quoting *Allard*, 249 F.3d at 572)). Defendant argues that based on *Allard*,

"absent federal trademark registration, the first party to use a mark in the geographic area begins to accrue common law rights in that mark in the area where it is used." (*Id*.). Because Defendant used the name Capitol Grille prior to Plaintiff's registration of its word mark and second design mark, Defendant contends that as a matter of law it did not infringe those trademarks.

Next, moving on from its argument for dismissal of the word mark and second design mark, Defendant asserts that Plaintiff fails to state a claim even as to its first design mark that was registered in 1991. This assertion has two main thrusts.

First, Defendant argues that "Plaintiff appears to conflate [Defendant's] use of a word mark with Plaintiff's registration of a design mark." (Doc. No. 22 at 8). Thus, Defendant implies that the use of a word mark cannot infringe a design mark.

Second, Defendant contends that the allegations that Defendant infringed Plaintiff's "name and marks" are not specific enough to state a claim for infringement of Plaintiff's first design mark.[13] Defendant acknowledges that Plaintiff alleges that Defendant "copied" or "otherwise infringed" Plaintiff's first design mark. (*Id.* at 8, 9). But according to Defendant, Plaintiff's allegations are too "vague" as to what Defendant *did* to infringe the first design mark— specifically, too vague about what mark(s) Defendant actually used in infringing the first design mark.[14] (*Id.*) Defendant contends that "[t]his vagueness does not constitute 'sufficient' factual matter' to state a claim that is plausible because Defendant is not even informed of the 'misconduct' it is liable for." (*Id*. at 9). Relatedly, Defendant takes aim at Plaintiff's allegations

---

[13] Defendant does not appear to apply this argument to the claim of infringement as to the word mark and second design mark—perhaps because it believed it had presented adequate grounds for dismissal as to those two marks. Whatever the reason, the Court takes the argument for what it is appears to be: limited in application to the first design mark.

[14] According to Defendant, Plaintiff suggests that Defendant infringed the first design mark by "us[ing] the word mark THE CAPITOL GRILL with a design mark," but, knowing that this is untrue, defaults to a general claim that Defendant used the "CAPITOL GRILLE name and marks" that term. (Doc. No. 22 at 8-9).

that Defendant "'uses the [first design mark] in commerce . . .  in a manner that is likely to confuse, mislead, or deceive the public . . . '" (*Id.*) (quoting Doc. No. 1 at ¶ 31) (ellipsis inserted). According to Defendant, these allegations are insufficient because Plaintiff does not explicitly allege that Defendant "copied" Plaintiff's first design mark, does not state plainly which of Plaintiff's mark Defendant used improperly, and does not state how Defendant actually used such mark improperly. (*Id.*).

*Plaintiff's Position*

Plaintiff challenges Defendant's implication that a word mark cannot infringe a design mark, asserting that "[a] word mark can certainly infringe a design mark, especially where the design elements are minimal." (Doc. No. 25 at 7 (citing *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997)). Plaintiff also contends that although *Allard* indeed states that a senior common law user can estop a junior federally-registered user, it is inapposite because here, according the Complaint, Plaintiff is the senior user inasmuch as it registered its first design mark four years prior to Defendant's use. (Doc. No. 25 at 7-8). Further, Plaintiff argues that it may be able to claim priority over Defendant's mark for Plaintiff's word mark and second design mark based on the doctrine of tacking. (*Id.* at 8 n.1). Plaintiff cites to *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907 (2015), where the court explained that in certain circumstances, "a party may clothe a new mark with the priority position of an older mark. This doctrine is called 'tacking,' and [tacking may be] available when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression." (*Id.* (quoting *Hana*, 135 S. Ct. at 909)). Plaintiff contends that "[a]t the very least, the concept of tacking is enough to warrant the denial of Defendant's [motion] as to [the] Word Mark and the Second [] Design Mark." (*Id.*). Defendant does not respond to Plaintiff's tacking argument in its Reply. (Doc. No. 26).

Further, with respect to Defendant's argument involving the first design mark, Plaintiff argues that "[u]nder the notice pleading requirement, the allegations pled are more than sufficient" and "the term 'Capitol Grille name and marks' is simply meant to encompass all variations of Plaintiff's name used by Defendant." (Doc. No. 25 at 9). According to Plaintiff, "[n]othing further is required under *Twombly*." (*Id*.).

*Analysis*

The Court agrees with Plaintiff on all points. First, the Court agrees that a word mark can infringe a design mark. *See In Re Aquitaine Wine USA, LLC*, 126 U.S.P.Q.2d 1181, 1187 (T.T.A.B. 2018) (examining the likelihood of confusion between a design mark and a word mark). Therefore, the Court rejects Defendant's implication that Plaintiff did not state a claim for trademark infringement because it alleges that Defendant's word mark infringed its first design mark. Whether the word mark actually infringed Plaintiff's design mark is a question on the merits, and therefore, inappropriate for the Court to examine on a motion to dismiss.

The Court also agrees that *Allard* stands from the proposition that that a senior common law user can estop a junior federally-registered user; however, the doctrine of tacking conceivably could support Plaintiff's claim of priority as to the word mark and second design mark, given its priority position as to the first design mark, and that resolution of this issue is not appropriate at the motion-to-dismiss stage. The issue presented in *Hana* was "whether a judge or a jury should determine whether tacking is available in a given case." 135 S. Ct. at 909. The Supreme Court held that "[a]pplication of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury."[15] *Id*. In regards to

_____

[15] In *Hana*, the Supreme Court resolved a circuit split in which the Sixth Circuit had fallen on the side of evaluating tacking as a legal question. *See Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, 323 F. Supp. 3d 972, 977 (W.D. Tenn. 2018).

whether a tacking question could be determined on summary judgment, the Supreme Court explained that "[i]f the facts warrant it, a judge may decide a tacking question on a motion for summary judgment or for judgment as a matter of law." *Id.* (citing Fed. Rules Civ. Proc. 50, 56(a)). Therefore, based on Supreme Court guidance, whether Plaintiff's word mark and second design mark may be tacked is a question of fact that is inappropriate for resolution at the motion to dismiss stage. For all of these reasons, Defendant's motion to dismiss as to these two marks will be denied

Finally, the Court also agrees that Plaintiff's allegations are not so vague as to render Plaintiff's allegations of infringement as to the first design mark insufficient under the *Twombly/Iqbal* standard. In the Complaint, Plaintiff alleges that

> [Defendant] uses [Plaintiff's] The Capital Grille & Design Mark [(*i.e.*, the first design mark)] in commerce in connection with the sale, offering for sale, or advertising of its own services without [Plaintiff's] authorization, in a manner that is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of [Plaintiff's] services.

(Doc. No. 1 at ¶ 31). The Complaint also plausibly suggests that that Defendant infringed Plaintiff's marks—including the first design mark—by using Defendant's "CAPITOL GRILLE" name and marks.  (Doc. No. 1 at ¶ 20).

The Court finds that this sufficiently alleges that Defendant infringed Plaintiff's first design mark. A specific allegation that Defendant "copied" Plaintiff's mark,[16] or used Plaintiff's mark (as opposed to a confusingly similar mark) is not required. Here, Defendant makes much of the fact that Plaintiff has not specified which of Plaintiff's three marks Defendant supposedly used (or copied). Undeniably, Plaintiff has alleged that Defendant used Plaintiff's marks, and in so doing

---

[16] In any event, as noted above, Defendant itself acknowledges that Plaintiff *has* alleged such copying. Plaintiff may not have done so "specifically" or explicitly, but even Defendant has construed Plaintiff to have done so in substance. Notably, "copying" is not an element of trademark infringement—a conspicuous fact, inasmuch as "copying" *is* an element of copyright infringement. *See Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985) (describing the elements of copyright infringement as (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original).

was arguably imprecise or over-inclusive as to which of its marks were used. But this does not matter, because the gist of the Complaint is not so much that Defendant used *Plaintiff's* mark(s), but rather that Defendant used *Defendant's own marks,* which are confusingly similar to Plaintiff's marks and thus infringing of Plaintiff's marks.

Likewise, a detailed description explaining how Defendant used the confusingly similar mark, is not required for Plaintiff's claim to survive Rule 12(b)(6) scrutiny, Plaintiff merely needs to allege, and has alleged, "sufficient factual matter" that demonstrates the elements of trademark infringement: that Plaintiff owns the first design mark; Defendant used the mark (or a confusingly similar mark) in commerce; and the use was likely to cause confusion. *See Iqbal*, 566 U.S. at 678; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (explaining that a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff").

Further, Defendant argues that the allegation Defendant used Plaintiff's first design mark is untrue, so Plaintiff "skirts the issue by constantly alleging that Defendant used The Capital Grille 'name and marks'" throughout the rest of the Complaint. (Doc. No. 22 at 8-9). However, the Court is *required* to view Plaintiffs allegation in Paragraph 31 as true on Defendant's motion to dismiss, and to the extent that Plaintiff takes an "inconsistent" position by alleging that Defendant used the first design mark, and then alleging it used Plaintiff's other marks, Plaintiff is allowed to plead in the alternative. *See* Fed. R. Civ. P. 8(d). And, as indicated above, whatever flaws conceivably exist in Plaintiff's allegations as to which of its marks Defendant used to infringe the first design mark, Count I survives as to that mark in any event based on the clear suggestion that Defendant infringed by using *Defendant's own* mark, which was confusingly "similar [to Plaintiff's marks] in sight, sound, connotation and commercial impression." (Doc. No. 1 at ¶ 23).

Finally, Defendant protestation of lack of notice as to the nature of its alleged wrongdoing rings hollow with the Court. The Court has no idea of the extent to which the Complaint's allegations are true or whether Plaintiff ultimately will prove entitled to relief on Count I. But just from reading the Complaint, the Court has a very good idea of the nature of the alleged wrongdoing underlying Count I as it relates. The concept is straightforward: Pursuant to registration under the Lanham Act Plaintiff owned the nationwide rights to the first design mark, which prominently included the name "THE CAPITAL GRILLE"—and Defendant infringed the first design mark once it "began using the "'CAPITOL GRILLE' name and mark in connection with the operation of [Defendant's Nashville restaurant]." (Doc. No. 1 at ¶ 20). To the extent that Defendant wishes to learn, and needs to know in order to be prepared for trial, exactly what all Defendant did to carry out this allegedly infringing activity, it may pursue such knowledge via discovery.

For all of these reasons, as to the first design mark as well as the other two marks, the Court will deny Defendant's motion to dismiss brought pursuant to Rule(12)(b)(6) as to Count I.

**Count II: Federal Unfair Competition and False Designation of Origin**

Defendant argues that Plaintiff's Complaint does not state a claim under 15 U.S.C. § 1125 (Unfair Competition and False Designation of Origin), as to its word mark and second design mark, asserting the same grounds the Court has addressed above—*i.e.,* that Plaintiff cannot establish that it has superior rights in the Nashville area. The elements of a Lanham Act Unfair Competition and False Designation of Origin claim are: "(1) Ownership of a specific mark; (2) Continuous use of the mark; (3) Establishment of a secondary meaning if the mark is descriptive; and (4) A likelihood of confusion amongst consumers due to the contemporaneous use of the parties' marks in connection with the parties' respective services." *Allard*, 146 F.3d at 355; *see also Sprint Sols., Inc. v. Lafayette*, 127 U.S.P.Q.2d 1256, 1268 (W.D. Tenn. June 22, 2018) ("The

Sixth Circuit considers claims for unfair competition and false advertising under 15 U.S.C. § 1125 using the same factors for trademark infringement claims under 15 U.S.C. § 1114."). As the Court discussed above, Defendant's argument is one for the merits and thus not grounds for dismissal under Rule 12(b)(6), because whether Plaintiff may invoke the doctrine of tacking to gain priority over Defendant's mark for its word mark and second design mark requires a factual inquiry. *See Hana*, 135 S. Ct. at 909. Accordingly, Defendant's motion to dismiss Count II will be denied.

### Count III: Common Law Trademark

Despite seemingly requesting the Court dismiss Plaintiff's Complaint in its entirety, Defendant does not specifically raise a challenge to Count III in its motion. And the Court is not required *sua sponte* to conjure up an argument for dismissal of Count III. This alone justifies denial of Plaintiff's motion to dismiss as to Count III. And even if the Court were to construe Defendant's motion as requesting dismissal of Count III, and then to consider the validity of that request, that motion would fail for the same reasons articulated in the Court's discussion of Count I. *See Alyn v. Southern Land Co., LLC*, NO. 3:15-cv-00596, 2016 WL 7451546, at *9 n.2 (M.D. Tenn. Dec. 28, 2016) ("Likelihood of confusion is also the basic test for common law trademark infringement."). Accordingly, Count III will survive Plaintiff's motion to dismiss.

### Count IV:

In its response, Plaintiff states "Regarding Capital Grille's Tennessee state unfair competition claim, Capital Grille will be dropping this claim, and will file an amended complaint once the court rules on the other grounds in Defendant's Motion." (Doc. No. 25 at 10 n.3). Therefore, Defendant's motion to dismiss will be denied as moot with respect to Count IV, without prejudice to Defendant's right to seek dismissal of Count IV if Plaintiff does not do as it says it will do.

**Count V**

As with Count III, Count V also will survive simply because Defendant does not argue in

its motion to dismiss that Count V should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 21) will be **DENIED**.

An appropriate order will be entered.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE